IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

MELANIE ANNE TURNER STEELE,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-4233

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.    INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.   Steele's Education and Employment Background  . . . . . . . . . . . . . . . 4
    B.   Medical Evidence Pertinent to Objections Raised by Steele . . . . . . . . . 5

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 7
    A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 7
    B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . 9
    C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII. RECOMMENDATION  . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Melanie Anne Steele on November 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. Steele asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Steele requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

Steele filed her application for disability benefits on April 23, 2012, alleging disability due to diabetes, depression, anxiety, neuropathy, high blood pressure, and incontinence. She alleged she became disabled on December 4, 2010. Her application was denied upon initial review, and on reconsideration. On March 18, 2014, Steele appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Alison K. Brookins for an administrative hearing. In a decision dated April 22, 2014, the ALJ denied Steele's claim. The ALJ determined Steele was not disabled and not entitled to disability insurance benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Steele appealed the ALJ's decision. On September 10, 2015, the Appeals Council denied Steele's request for review. Consequently, the ALJ's April 22, 2014 decision was adopted as the Commissioner's final decision.

On November 12, 2015, Steele filed the instant action for judicial review. A briefing schedule was entered on January 15, 2016. On May 11, 2016, Steele filed a brief arguing there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and she is functionally capable of performing other work that exists in significant numbers in the national economy. On June 16, 2016, the Commissioner filed

a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 28, 2016, Judge Leonard T. Strand referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Additionally, on March 18, 2016, both parties filed together a joint statement of facts addressing the case's procedural history, testimony from the administrative hearing, and Steele's medical history. *See* docket number 12. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of this matter.

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the

ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Steele's Education and Employment Background

Steele was born in 1972. She did not graduate from high school, but later earned a GED. In the past, Steele worked as an aide and janitor.

## B. Medical Evidence Pertinent to Objections Raised by Steele

On July 12, 2012, Steele was referred by Disability Determination Services ("DDS") to Amy J. Tegels, APRN, for a disability evaluation. Steele's chief complaint was bilateral peripheral neuropathy in her lower extremities, secondary to diabetes. Steele rated her pain at 7 on a scale of 1 to 10, with 10 being the greatest amount of pain. She stated that her pain is "daily" and "constant." She indicated that her daily pain medication makes her sleepy. Steele also reported suffering from stress incontinence. Tegels reported Steele's description of her functional abilities as follows:

> She claims that her condition limits her ability to function at home and at work as the pain is present virtually all of the time and any activity will aggravate it. Additionally, she feels tired all of the time and spends most of each day lying down resting. She claims that she can sit for 30 minutes without having to change positions. After standing for 15 minutes with rocking back and forth then she has to sit. She can walk for only 2 blocks before hav[ing] to stop and break, due to the pain and stiffness and lots of cramping. Lifting limit is about 15 lbs with pain. She can't bend or twist without pain. She reports pain with climbing stairs, kneeling and crawling. She has balance and coordination issues, secondary to pain[.]

(Administrative Record at 423.) Upon examination, Tegels concluded Steele "does have neuropathy related to her diabetes. She does complain that she has pins and needles constantly that prevent her from being on her feet for long periods of time. I would recommend a sitting job with low physical capacity levels."[1]

On August 1, 2012, Dr. Matthew Byrnes, D.O., reviewed Steele's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Steele. Dr. Byrnes determined Steele could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for

---

[1] Administrative Record at 426.

5

a total of about two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull with limitations in her lower extremities. Dr. Byrnes also found Steele could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Dr. Byrnes further found Steele could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Byrnes opined Steele should avoid concentrated exposure to extreme cold, extreme heat, and humidity. Dr. Byrnes found no manipulative, visual, or communicative limitations.

On January 16, 2013, Dr. Jennifer Ryan, Ph.D., reviewed Steele's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Steele. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Steele with affective disorders and anxiety disorders. Dr. Ryan determined Steele had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan found Steele was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Ryan concluded Steele "supports the assertion that [she] is able to remember and carry out simple instructions and perform routine, repetitive work tasks consistent with this ability in environments with limited interpersonal demands.

On January 17, 2013, Dr. Gary Cromer, M.D., reviewed Steele's medical records and provided DDS with a physical RFC assessment for Steele.[2] Dr. Cromer determined Steele could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull with limitations in her lower extremities. Dr. Cromer also found Steele could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Dr. Cromer further found Steele could occasionally balance, stoop, kneel, crouch, and crawl. Dr. Cromer opined Steele should avoid concentrated exposure to extreme cold, extreme heat, and humidity. Dr. Cromer found no manipulative, visual, or communicative limitations. Dr. Cromer concluded:

> Evidence fails to document substantial worsening in physical condition warranting alteration in the initial assessment. No opinion evidence is noted. The initial assessment, supplemented by this update, remains appropriate and is hereby affirmed.

(Administrative Record at 86.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Steele was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment

---

[2] Dr. Cromer's review was at the reconsideration level of Dr. Byrnes' initial RFC assessment for Steele.

7

is or approximates an impairment listed in Appendix 1;
(4) whether the claimant can perform past relevant work; and,
if not, (5) whether the claimant can perform any other kind of
work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland*

8

*v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Steele had not engaged in substantial gainful activity since December 4, 2010. At the second step, the ALJ concluded from the medical evidence Steele has the following severe impairments: diabetes, obesity, peripheral neuropathy, depression, and anxiety. At the third step, the ALJ found Steele did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Steele's RFC as follows:

> [Steele] has the residual functional capacity to perform less than a full range of light work . . . except that she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, and scaffolding. She should avoid concentrated exposure to temperature extremes, humidity, and hazards. She can perform unskilled work involving routine repetitive tasks and would do best working with things, not people.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined Steele is unable to perform her past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Steele could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Steele was not disabled.

### B. Objections Raised By Claimant

Steele primarily argues, among other things, that the ALJ's RFC assessment is flawed because it is not supported by substantial evidence. Specifically, Steele argues "[n]o evidence supports the ALJ's determination that [she] can stand and walk most of the

day. All doctors who expressed any opinion agreed that she had to have a sit down job or sedentary job."[3] Therefore, Steele requests that this case be remanded for further development and consideration of her RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately

---

[3] Steele's Brief (docket number 17) at 7.

10

developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). Significantly, the ALJ's duty exists independent of a claimant's burden to press his or her case. *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) ("'Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.' *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).").

Moreover, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, Steele correctly points out that both State Agency non-examining doctors (Drs. Byrnes and Cromer) limited her ability to stand/walk to no more than two hours in an eight-hour workday, which indicates she is only capable of sedentary work.[4] *See* SSR 83-10, 1983 WL 31251 at *5-*6 (comparing standing/walking approximately 2 hours per workday for sedentary work with standing/walking approximately 6 hours per workday for light work). Similarly, the consultative examining source hired by DDS, Amy J. Tegels, APRN, also limited Steele to sedentary work.[5] In contrast to the opinions of Dr. Byrnes,

---

[4] *See* Administrative Record at 70 (Dr. Byrnes); 84 (Dr. Cromer).

[5] *Id*. at 426.

11

Dr. Cromer, and Tegels, the ALJ determined Steele was capable of light work.[6] Steele maintains the ALJ's determination that she is capable of light work is in error because it is not based on substantial evidence in the record.

In her decision, the ALJ does not address Dr. Byrnes' opinion and, instead, focuses solely on Dr. Cromer's opinion which is nearly identical to Dr. Byrnes' opinion. In considering Dr. Cromer's opinion, the ALJ granted "substantial weight" to his opinion. The ALJ generally adopted Dr. Cromer's findings in her RFC, except for his limiting of Steele to standing/walking two hours in an eight-hour workday. The ALJ reasoned the two-hour standing/walking limitation "is not supported by the record. There is no indication that treatment providers have recommended a restriction to standing or walking."[7] The ALJ also addressed Tegels' opinion. The ALJ granted only "partial weight" to Tegels' opinion because "the limitation to a 'sitting job' appears to have been solely on [Steele's] subjective complaints."[8]

The Court believes the ALJ's reasoning as it pertains to the opinions of Dr. Cromer and Tegels misses the mark. First, the ALJ points to no evidence in the record to support her assertion that Dr. Cromer's standing/walking limitation "is not supported by the record." In fact, a review of the entire record demonstrates that beginning in March 2011, consistent with Dr. Cromer's and Tegels' opinions, Steele started complaining about foot tingling and pain, and was diagnosed with diabetic peripheral neuropathy.[9] Additional treatment notes in 2011 and 2012 consistently provide diagnoses of diabetic peripheral

---

[6] *Id.* at 15.

[7] Administrative Record at 21.

[8] *Id.*

[9] *See* Administrative Record at 329.

12

neuropathy and complaints from Steele of foot pain, numbness, and tingling.[10] Second, while the ALJ is correct that no treatment provider recommended a restriction on standing or walking, the record reveals that no treatment provider recommended any type of restriction or limitation as it pertains to Steele and her functional abilities. Third, the Court is unpersuaded that Tegels' reliance on Steele's "subjective complaints" is an adequate reason for disregarding Tegels's opinions. "A patient's report of complaints, or history, is an essential diagnostic tool" for any medical source when he or she is offering a medical opinion or diagnosis. *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997); *see also Brand v. Secretary of Dept. of Health, Ed. and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980) ("Any medical diagnosis must necessarily rely upon the patient's history and subjective complaints."). Finally, the ALJ provides no explanation in her decision for her conclusion that Steele's RFC includes the ability to perform light work, even though the record shows that she was consistently diagnosed and treated for peripheral diabetic neuropathy, and Dr. Byrnes, Dr. Cromer, and Tegels all limited her sedentary work.

Given the inconsistency between the ALJ's RFC and the opinions of Dr. Byrnes, Dr. Cromer, and Tegels regarding Steele's ability to stand/walk, the Court believes it is important that the ALJ fully explain her reasons for determining Steele is capable of light work instead of sedentary work, and support her reasoning with evidence from the record. Therefore, because the ALJ failed to explain her reasoning and there is no evidence in the record that addresses Steele's functional abilities and limitations, the Court finds that remand is appropriate to allow the ALJ to fully and fairly develop the record as it pertains to Steele's RFC. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment must be based on all of the relevant evidence). Moreover, on remand, the ALJ should also order a consultative examination that addresses Steele's functional abilities and limitations, particularly her ability to stand and walk during an eight-hour workday. *See Barrett*,

---

[10] *Id.* at 303, 311, 411, 440.

38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Steele's RFC.

## VI. CONCLUSION

I recommend that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should fully and fairly develop the record with regard to Steele's RFC.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this 17th day of October, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA